UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN THOMPSON,

                          Plaintiff,

                   -v-

SGT. BOOTH, C.O. SALERNO, C.O. GARNOT,
C.O. JORDAN, C.O. VIGNA, RN PETERSON,
MD HILL, PHY SCOT B., HO WOODS,

                          Defendants.[1]

No. 16-CV-3477 (KMK)

OPINION & ORDER

Appearances:

Kevin Thompson
Brooklyn, NY
*Pro se Plaintiff*

Janice Powers, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants Booth, Salerno, Garnot, Jordan, Woods, and Vigna*

Roy W. Breitenbach, Esq.
Courtney A. Rogers, Esq.
Garfunkel Wild, P.C.
Great Neck, NY
*Counsel for Defendant Hill*

KENNETH M. KARAS, District Judge:

        Plaintiff Kevin Thompson ("Plaintiff") brings this pro se action, pursuant to 42 U.S.C.

§ 1983, against Sgt. Booth ("Booth"), Correction Officer ("C.O.") Salerno ("Salerno"), C.O.

---

[1] Correction Officer ("C.O.") Vigna is listed in the caption as "Vigina," which is incorrect. His surname is "Vigna," as noted in all relevant motion papers. The Clerk is instructed to update the caption accordingly.

Additionally, Plaintiff lists "MD Hill" and "Phy Scot B." as Defendants, but notes in his opposition that this was a mistake. Defendant's actual name is MD Scott B. Hill. (Pl.'s Opp'n to Defs.' Mot To Dismiss ("Pl.'s Opp'n") 6 n.1 (Dkt. No. 80).) The Clerk is instructed to update the caption accordingly.

Garnot ("Garnot"), C.O. Jordan ("Jordan"), C.O. Vigna ("Vigna"), HO Woods ("Woods") (collectively "Fishkill Defendants"), MD Hill ("Hill"), and RN Peterson ("Peterson") (collectively, with the Fishkill Defendants, "Defendants"), alleging that Booth, Salerno, Garnot, Jordan, Vigna, Woods, and Peterson violated his Eighth and Fourteenth Amendment rights when they assaulted him and covered up the incident. (Compl. (Dkt. No. 2).) Plaintiff also alleges that Peterson and Hill violated his Eighth Amendment rights by failing to provide him with proper medical care. (*Id.*; *see also* Pl.'s Opp'n to Defs.' Mot To Dismiss ("Pl.'s Opp'n") (Dkt. No. 80).) Before the Court is the Fishkill Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* "Fishkill Defs.' Motion" (Dkt. No. 75)), and Hill's Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* "Hill's Motion" (Dkt. No. 73)).[2] For the reasons to follow, the Fishkill Defendants' Motion is granted in part and denied in part, and Hill's Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and Plaintiff's Opposition to the Motion To Dismiss, (Pl.'s Opp'n), and are taken as true for the purpose of resolving the instant Motions. During the time of the alleged events, Plaintiff was a convicted prisoner at Fishkill. (Fishkill Defs.' Memo. of Law in Supp. of Mot. To Dismiss ("Fishkill Defs.' Mem.") 5 (Dkt. No. 79).)

---

[2] All Defendants except for Peterson have filed Motions. As noted below, Peterson has been served but has not yet appeared in this case.

On January 13, 2014, Plaintiff "was coming out of the [b]athroom [and] [he] beg[a]n to have a seizure." (Compl. 3.)[3] According to Plaintiff, he has "a disorder that is inside [his] medical records" that states that he has seizures. (*Id.*) As he was having this seizure, "the Responding Officers[,] instead of helping [him,] assaulted and battered Plaintiff continuously with no remorse until Plaintiff was unconsci[ous] and had to get rushed to a[n] outside hospital." (*Id.*) In his Opposition, Plaintiff notes that Booth, Salerno, Garnot, and Vigna, "while [Plaintiff was] having a seizure . . . began violently hitting, kicking[,] and assaulting [Plaintiff]." (Pl.'s Opp'n ¶ 9.) Jordan is also alleged to have been "present and actively participating in the above described incident." (*Id.* ¶ 10; *see also id.* ¶ 48 ("Defendants Booth, Salerno, Garnot, Jordan and Vigna . . . all . . . assault[ed] and batter[ed] Plaintiff on the night in question.").) Plaintiff specifically notes that Booth "told the officers to get sticks from the broom closet to hold Plaintiff down," and that "Vigna kicked Plaintiff in his mouth." (*Id.* ¶ 9.) Upon regaining consciousness, Plaintiff was "lying face down on the floor . . . approximately twenty five feet away from his cell," and "in excruciating pain." (*Id.* ¶ 10.) Plaintiff was handcuffed such that his hands were swollen, and his thumb was dislocated. (*Id.*) His "upper five front teeth were loose and his face was bleeding." (*Id.*) Booth was on top of Plaintiff, and while holding Plaintiff down he "yelled out 'Code Ten' and directed Defendant Jordan to alert Defendant Peterson." (*Id.* ¶ 11.) Booth then directed the Fishkill Defendants to "get a face mask . . . to prevent spitting," which Booth pulled over Plaintiff's face. (*Id.*) "Booth, Garnot, and Jordan then placed Plaintiff on a dolly and proceeded to wheel him to the medical clinic." (*Id.*) At an unspecified

---

[3] For ease of reference, given Plaintiff's use of a standard complaint form, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's Complaint.

time, "Peterson injected Plaintiff with some substance, after which Plaintiff began feeling relaxed and tired." (*Id.*)

Plaintiff was later transported outside of Fishkill to the emergency room at St. Luke's Hospital, where he was seen by Hill. (*Id.* ¶ 12.) Plaintiff attempted to tell Hill that he had suffered a seizure, but Hill responded that he "heard [Plaintiff] assaulted staff." (*Id.*) According to Plaintiff, Hill "did not fully examine Plaintiff or take photographs of his injuries . . . instead . . . Hill took a statement from Defendant Booth who described in his own words Plaintiff's condition." (*Id.* ¶ 13.) Hill "did not treat any of Plaintiff's injuries, including [his] dislocated thumb," and as a result he "did not receive the necessary surgery to correct his injury." (*Id.* ¶¶ 14–15.) Plaintiff makes a similar claim regarding lack of treatment for his loose teeth, his head, neck, wrists, shoulder, and foot. (*Id.* ¶¶ 16–21.) Plaintiff believes this was because "of his status as an inmate." (*Id.* ¶ 14.)

On the same evening that Plaintiff arrived at St. Luke's Hospital, he "was transported to Mount Vernon Hospital," where he was admitted. (*Id.* ¶ 23.) On January 14, 2014, a female sergeant photographed Plaintiff's injuries to his mouth, hands, shoulders, and neck. (*Id.* ¶ 24.) While at Mount Vernon Hospital, "Plaintiff received seizure medication once . . . [and] was never treated for his injuries," despite "repeatedly complain[ing] of severe pain and discomfort." (*Id.* ¶ 25.) Instead, Plaintiff "received regular Tylenol for his pain[,] which did not alleviate his severe pain and discomfort." (*Id.*)

Upon his return to Fishkill, "Plaintiff was immediately confined to solitary confinement for six months." (*Id.* ¶ 27.) In solitary confinement, Plaintiff alleges "he was not granted adequate facilities and was still experiencing severe ongoing pain from his injuries." (*Id.* ¶ 28.) It was "very cold," but "Plaintiff was not provided with sheets or blankets . . . [or] adequate

clothing such as a sweater or other warm garment." (*Id.* ¶ 29.) Plaintiff's toilet "was never

cleaned," and "[h]e was only given an opportunity to shower every other week." (*Id.*)

Additionally, "Plaintiff was not allowed his daily hour outside." (*Id.*) Plaintiff does not mention

who, if any one, enforced these conditions.

Then, "[a]pproximately one month after the incident . . . on February 5, 2014, a hearing

was held pertaining to the incident." (*Id.* ¶ 30.) Woods presided over the hearing, and "found

against Plaintiff despite multiple witness statements describing how the Defendants assaulted

Plaintiff while he was unconscious and having a seizure." (*Id.* ¶ 31.) At the hearing, "Vigna

falsely claimed Plaintiff picked up a chair in [a] crouching position and hit him in the knee." (*Id.*

¶ 32.) As a result of Woods' findings at the disciplinary hearing, "Plaintiff was given a sentence

of nine months in solitary confinement." (*Id.* ¶ 33.) During this time, Plaintiff was subject to the

identical conditions he suffered in solitary confinement prior to the hearing. (*Id.* ¶ 34.)

On March 3, 2014, "Plaintiff was transferred to Great Meadow Correctional Facility

("Comstock")," where he "was immediately placed in solitary confinement" under the same

conditions as at Fishkill. (*Id.* ¶ 35.) Plaintiff spent another five and a half months in solitary

confinement. (*Id.* ¶ 36.) At Comstock, "Plaintiff was sent to various x-rays and was seen by a

dentist," who "gave Plaintiff a plate for his teeth," which ultimately caused his teeth to begin

falling out. (*Id.* ¶ 37.) "Plaintiff continued to experience severe headaches, hand, shoulder[,]

and neck pain." (*Id.*) Then, on August 12, 2014, Plaintiff underwent surgery to fix his

dislocated thumb. (*Id.* ¶ 38.)

In May 2016, after being transferred to Eastern Correctional Facility ("Eastern"),

"Plaintiff underwent various medical treatments to address the injuries he suffered as a result of

the January [2014] attack, including dental surgery and a second neck scan." (*Id.* ¶ 40.) Plaintiff was released from Eastern on December 20, 2016. (*Id.* ¶ 44.)

As a result of the assault, Plaintiff alleges that he "has permanently lost five teeth, has permanent pain in his neck and left hand . . . [p]ermanent cramping and pain in both hands . . . permanent mobility issues with his neck as well as permanent loss of hearing in his left ear. Plaintiff also suffers pins and needles pain in his right shoulder . . . [and] pain and discomfort in his left foot." (*Id.* ¶ 45.)

B.  Procedural History

Plaintiff filed the Complaint on May 9, 2016. (*See* Compl.)  Plaintiff's request to proceed in forma pauperis was granted on July 18, 2016.  (*See* Dkt. No. 11.)  Along with his Complaint, Plaintiff filed a Motion To Appoint Pro Bono Counsel, (*see* Dkt. No. 9), which the Court denied without prejudice on August 10, 2016, (*see* Dkt. No. 14).  Simultaneously, the Court issued an Order of Service, directing the U.S. Marshals to effect service on Defendants. (*See id.*)  On October 25, 2016, the Court gave Plaintiff an additional 60 days to effect service on the unserved Defendants, and required all served Defendants to respond by December 15, 2016.  (*See* Dkt. No. 28.)  The Court granted a further extension on January 30, 2017, wherein the time to answer was extended until 30 days after the final Defendant was served.  (*See* Dkt. No. 37.)

However, Plaintiff still could not serve all Defendants, and the Court granted him an extension until February 28, 2017 to serve all Defendants.  (*See* Dkt. No. 38.)  The Court also denied Plaintiff's renewed Motion To Appoint Pro Bono Counsel on February 2, 2017.  (*See* Dkt. No. 39.)  Ultimately, given the service issues related to Defendants Booth, Woods, Peterson, and Hill, the Court instructed the Clerk's Office to issue new summonses and instructed the Marshal's Service to effect service upon these defendants.  (*See* Dkt. No. 41.)  By

April 18, 2017, all Defendants except Wood had been served.  (*See* Dkt. No. 56.)  Wood was finally served on August 8, 2017.  (*See* Dkt. No. 71.)

Shortly thereafter, the Fishkill Defendants filed a letter seeking leave to file a Motion To Dismiss the Complaint.  (*See* Letter from Janice Powers, Esq. to Court (August 11, 2017) (Dkt. No. 67).)  Defendant Hill filed a similar letter on August 14, 2017.  (*See* Letter from Courtney A. Rogers, Esq. to Court (Aug. 14, 2017) (Dkt. No. 68).)  The Court then set a briefing schedule. (*See* Dkt. No. 70.)  The Fishkill Defendants filed their Motion To Dismiss and accompanying papers on September 26, 2017, (*see* Dkt. Nos. 73, 79), and Hill filed his Motion and accompanying papers on September 29, 2017, (*see* Dkt. Nos. 75–78).  On October 26, 2017, Plaintiff filed an Opposition to the Motions.  (*See* Pl.'s Opp'n.)  The Fishkill Defendants filed their Reply and accompanying papers on November 20, 2017, (*see* Fishkill Defs.' Reply in Supp. of Mot. To Dismiss ("Fishkill Defs.' Reply") (Dkt. No. 85)), and Hill filed his Reply and accompanying papers on December 1, 2017, (*see* Dkt. Nos. 87–89).

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks

omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F.

Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is drafted by a pro se

plaintiff, the Court may consider "materials outside the complaint to the extent that they are

consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907,

2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted),

including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No.

09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements

by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference,"

*Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19,

2013), and "documents that the plaintiff[ ] either possessed or knew about and upon which [he or

she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of

Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d

601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding

procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

1.  Fishkill Defendants' Motion To Dismiss

a.  Personal Involvement as to Excessive Force

Defendants Booth, Salerno, Garnot, Jordan, and Vigna argue that Plaintiff's Eighth

Amendment claims asserted against them should be dismissed because Plaintiff has failed to

plead their personal involvement in the alleged constitutional violations, (Fishkill Defs.' Reply

¶¶ 2–8), and because Plaintiff's allegations of excessive use of force are "solely based on unsupported, conclusory and vague statements," (*id.* ¶ 6).

It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that the Fishkill Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

As noted, the Court may consider factual allegations raised for the first time in a pro se plaintiff's opposition papers if they are plausible and consistent with the allegations in the complaint. *See Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases). Plaintiff's Complaint alleged, in relevant part, that "the Responding Officers[,] instead of helping Plaintiff[,] assaulted and

[b]attered Plaintiff, continuously with no remorse until Plaintiff was unconsci[ous] and had to get rushed to a[n] outside hospital." (Compl. 3.) Plaintiff's Opposition is not inconsistent with his initial allegations; instead, it merely supplements his factual allegations with details as to the relevant who, what, where, when, and how of the alleged assault. Such allegations may be considered here. *See Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." (italics omitted)); *Oliver v. Haddock,* No. 08-CV-4608, 2009 WL 4281446, at *2 (S.D.N.Y. Dec. 1, 2009) (considering a pro se prisoner's factual allegations in briefs as supplementing the complaint). Furthermore, the Fishkill Defendants cite no relevant case law to support the argument that "to defeat a motion to dismiss, the information submitted in opposition must be admissible and not second hand information or hearsay." (Fishkill Defs.' Reply ¶ 2.) Instead, the Fishkill Defendants rely on a *summary judgment* opinion from the Second Circuit, *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970), which has no bearing on the standard of review on a motion to dismiss. Rather, on a motion to dismiss, as counsel is surely aware, the Court must accept as true *all* factual statements alleged in the complaint, and "whether the statements . . . might constitute inadmissible hearsay when relied upon for the truth of the matters asserted is simply irrelevant." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 235 (E.D.N.Y. 2010); *see also Lewis v. Roosevelt Island Operating Corp*., 246 F. Supp. 3d 979, 991 n.7 (S.D.N.Y. 2017) ("[T]he ultimate admissibility of evidence included in a complaint is immaterial when deciding a motion to dismiss."); *In re Palermo*, No. 08-CV-7421, 2011 WL 446209, at *5 (S.D.N.Y. Feb. 7, 2011) (same). Thus, even assuming that Plaintiff's allegations are replete with hearsay, for the purpose of a motion to dismiss, the Court "accepts

the truth of the factual allegations pled and construes those facts in the light most favorable to the plaintiff," irrespective of their admissibility at some later stage. *In re Palermo*, 2011 WL 446209, at \*5 (alterations and internal quotation marks omitted).

Turning to Plaintiff's allegations, Plaintiff's Complaint alleges that "the Responding Officers[,] instead of helping Plaintiff[,] assaulted and [b]attered Plaintiff, continuously with no remorse until Plaintiff was unconsci[ous] and had to get rushed to a[n] outside hospital." (Compl. 3.) Plaintiff's Opposition goes on to state that "[t]hree witnesses . . . stated [to Plaintiff] that while [Plaintiff was] having a seizure Defendants Booth, Salerno, Garnot and Vigna approached Plaintiff and began violently hitting, kicking and assaulting him." (Pl.'s Opp'n ¶ 9.) Plaintiff also alleges that he was informed that "Vigna kicked Plaintiff in his mouth," and that "Plaintiff was dragged from his bed to the hallway, approximately 25 feet away." (*Id.*) Plaintiff awoke in "excruciating pain" and was "in the hallway, lying face down on the floor . . . hands . . . cuffed behind his back . . . his thumb was dislocated . . . [his] hands were swollen from the restraints[, and] Plaintiff's upper five front teeth were loose and his face was bleeding." (*Id.* ¶ 10.) Booth was on top of Plaintiff, and Plaintiff alleges that "Booth, Salerno, Garnot, Jordan and Vigna were present and actively participating in the above described incident," meaning the alleged attack. (*Id.*) Read in the light most favorable to Plaintiff, the "Responding Officers" consisted of Booth, Salerno, Garnot, Vigna, and Jordan, who then went on to "violently hit[], kick[] and assault[]" Plaintiff. (Compl. 3; Pl.'s Opp'n ¶ 9.) Such allegations adequately state a claim that Booth, Salerno, Garnot, Vigna, and Jordan "participated directly in the alleged constitutional violation," as they are the attackers in this case; thus, the requirement of personal involvement is satisfied here. *Grullon*, 720 F.3d at 139 (internal quotation marks omitted); *see also Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 153 n.17 (S.D.N.Y. 2016) ("[The] [p]laintiff

has adequately alleged that [the defendant] 'participated directly in the alleged constitutional violation,' which is, of course, sufficient to demonstrate personal involvement." (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

To the extent that the Fishkill Defendants argue that Plaintiff's allegations are "vague," Plaintiff's Opposition does, in fact, detail when Plaintiff was attacked, by whom, the precise manner in which he was attacked, and the injuries he suffered as a result of the alleged attack. (*See* Pl.'s Opp'n ¶¶ 9–10, 45.) "Therefore . . . the [allegations are] sufficient on [their] face to allow the Court to reach the reasonable conclusion that the Plaintiff has stated a plausible claim of excessive force." *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 689 (S.D.N.Y. 2016); *see also De Ponceau v. Bruner*, No. 09–CV–605, 2012 WL 1030415, at *6 (N.D.N.Y. Feb. 21, 2012) (finding the complaint legally sufficient to state a plausible excessive force claim where it included the date, identified the assailants, and described the manner of the attack), *adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012).[4]

As to Woods, however, Plaintiff's sole allegation regarding the assault is that he failed to

---

[4] The Fishkill Defendants have moved solely on the basis of personal involvement, and have not challenged the underlying merits of Plaintiff's excessive force claim in so far as they have put forth no argument that the force allegedly used was not cruel and unusual under the Eighth Amendment. (*See* Fishkill Defs.' Mem; Fishkill Defs.' Reply.) Thus, the Court need not reach the underlying merits of Plaintiff's excessive force claim against Booth, Salerno, Garnot, Vigna, and Jordan. Nevertheless, Plaintiff's allegation that he was "violently hit[], kick[ed] and assault[ed]" by these individuals, and was "kicked . . . in [the] mouth" by Vigna, and that he was "dragged from his bed to the hallway," (Pl.'s Opp'n ¶ 9), resulting in various serious maladies, (*see id.* ¶ 10), constitute "more than a de minimis use of force that parallels the degree of force found by other courts to be sufficiently serious," *Banks*, 168 F. Supp. at 689; *see also Sims v. Artuz*, 230 F.3d 14, 22, 25 (2d Cir. 2000) (vacating judgment dismissing excessive force claim where corrections officers punched the plaintiff several times "without need or provocation"); *Phelan v. Hersh*, No. 10-CV-11, 2011 WL 6031940, at *12 (N.D.N.Y. Sept. 13, 2011) ("[T]hough [the] [p]laintiff provides sparse details of the incident, his claim suggests that [the defendant] hit him maliciously, multiple times, and without the good-faith effort to maintain discipline. This is enough to validly state an excessive force claim . . . ."), *adopted by* 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011).

adequately train or supervise subordinates.  (Pl.'s Opp'n ¶ 49.)  An allegation that a defendant

failed to adequately train or supervise subordinates implicates whether "the defendant was

grossly negligent in supervising subordinates who committed the wrongful acts."  *Colon*, 58 F.3d

at 873.  To establish personal involvement on that basis

> Plaintiff must show that [the defendant] "knew or should have known that there
> was a high degree of risk that his subordinates would behave inappropriately, but
> either deliberately or recklessly disregarded that risk by failing to take action that
> a reasonable supervisor would find necessary to prevent such a risk, and that
> failure caused a constitutional injury to Plaintiff."

*Frederick v. Sheahan*, No. 10–CV–6527, 2014 WL 3748587, at *8 (W.D.N.Y. July 29, 2014)

(alterations omitted) (quoting *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002)); *see also*

*Kucera v. Tkac*, No. 12–CV–264, 2013 WL 1414441, at *6 (D. Vt. Apr. 8, 2013) (noting an

"alleged failure [to supervise or train] [would] satisfy the fourth *Colon* factor if [the officers]

'knew or should have known that there was a high degree of risk that subordinates would behave

inappropriately but either deliberately or recklessly disregarded that risk by failing to take action

that a reasonable officer would find necessary to prevent such a risk.'" (alterations omitted)

(quoting *Poe*, 282 F.3d at 142)).  A general allegation that Woods failed to supervise

subordinates, however, is insufficient to establish personal involvement, absent some factual

connection between this failure and the harm that allegedly befell Plaintiff.  *See McRae v.*

*Gentile*, No. 14–CV–783, 2015 WL 7292875, at *5 (N.D.N.Y. Oct. 20, 2015) (noting that

"[v]ague and conclusory allegations that a supervisor negligently failed to train or supervise

subordinate employees are not sufficient to establish personal involvement so as to give rise to

personal liability." (internal quotation marks omitted)), *adopted by* 2015 WL 7300540 (N.D.N.Y.

Nov. 18, 2015); *Shepherd v. Fischer*, No. 10–CV–1524, 2015 WL 1246049, at *13 (N.D.N.Y.

Feb. 23, 2015) (rejecting as too conclusory or otherwise non-cognizable the assertion that the

superintendent defendants, "acting alone and/or in conjunction with each other, were aware of there being a systematic, gross inadequacies in training as well [as] supervision of subordinates in the use of force, and further failed to take corrective as well as preventative measures, which caused the violation of [the] plaintiff's rights.") (internal quotation marks omitted), *adopted by* 2015 WL 1275298 (N.D.N.Y. Mar. 18, 2015)); *cf. Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (concluding that, "[t]o the extent that the complaint attempts to assert a failure-to-supervise claim . . . , it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [the plaintiff's] constitutional rights"). Here, Plaintiff's allegations that Woods failed to adequately supervise his subordinates, without *any* indication of his supervisory role with regard to Booth, Salerno, Garnot, Vigna, and Jordan, are far too conclusory to pass muster and therefore Plaintiff's claim against Woods is dismissed.

### b. Personal Involvement as to Conditions of Plaintiff's Confinement

Plaintiff alleges that "he was not granted adequate facilities and was still experiencing severe ongoing pain from his injuries," (Pl.'s Opp'n ¶ 28), and that he was "very cold," but "was not provided with sheets or blankets . . . adequate clothing such as a sweater or other warm garment," (*id.* ¶ 29). Additionally, Plaintiff's toilet "was never cleaned," "[h]e was only given an opportunity to shower every other week," and he "was not allowed his daily hour outside." (*Id.*) Even assuming Plaintiff has stated a claim that such conditions violated the Eighth Amendment, nothing in Plaintiff's Complaint or Opposition suggests that *any* Defendant was directly or indirectly involved in causing these harms to Plaintiff, let alone was aware that the conditions existed. *See Smart v. Gifford*, No. 15-CV-8939, 2018 WL 401516, at *13 (S.D.N.Y. Jan. 12, 2018) (dismissing an Eighth Amendment claim regarding the conditions of a prisoner's confinement where the plaintiff "ma[de] no allegations in her Amended Complaint that any

[d]efendant knew of the alleged conditions, let alone participated in their creation"). Moreover, even assuming that Woods held a generally supervisory role, as alleged by Plaintiff, (Pl.'s Opp'n ¶ 49), he "cannot be held personally liable for constitutional violations merely 'because [he is] in a high position of authority' at [Fishkill]." *Smart*, 2018 WL 401516, at *13 (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). There is no allegation that Woods failed to "act on information regarding the [allegedly] unlawful conduct" or otherwise acted with "gross negligence." *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *12 (quoting *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir. 2003)). Nor is there any "allegation that Plaintiff complained to, filed a grievance with, or even mentioned this condition to any Defendant," or any suggestions that *any* Defendant, let alone Woods, was "aware of the allegedly unconstitutional conditions in SHU, or that Plaintiff specifically was at risk." *Smart*, 2018 WL 401516, at *13.

Accordingly, the Fishkill Defendants' Motion To Dismiss the Eighth Amendment claims of excessive force for lack of personal involvement is granted as to Woods, and denied as to the remaining Defendants. The Eighth Amendment claims regarding the conditions of Plaintiff's confinement are dismissed as to all Defendants for lack of personal involvement.[5]

### c. Due Process Claim

Plaintiff also alleges that Woods "presided over [his] [disciplinary] hearing as hearing officer," and "found against Plaintiff despite multiple witness statements describing how the

---

[5] The Court declines to reach the Fishkill Defendants' argument that Booth, Salerno, Garnot, Vigna, and Jordan are entitled to qualified immunity, (Fishkill Defs.' Mem. 9; Fishkill Defs.' Reply ¶ 11), because, as this Court has previously informed Defendants' counsel, this defense must actually be argued in the briefing to merit consideration. *See James v. Gage*, No. 15-CV-106, 2018 WL 2694436, at *15 n.18 (S.D.N.Y. June 5, 2018); *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018).

Defendants assaulted Plaintiff while he was unconscious and having a seizure." (Pl.'s Opp'n ¶ 31.) Moreover, Plaintiff alleges that "Vigna falsely claimed Plaintiff picked up a chair in the crouching position and hit [Vigna] in the knee." (*Id.* ¶ 32.) Construed liberally, Plaintiff appears to assert procedural due process claims against Woods and Vigna arising out of this February 5, 2014 hearing.

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alterations and internal quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (internal quotation marks omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which

the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (internal quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (internal quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Indeed, the Second Circuit has cautioned that "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65–66.

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL

6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

It is clear that Plaintiff's sentence of nine months in confinement falls within the 101 to 305 day guidepost set in *Palmer*. (Pl.'s Opp'n ¶ 33.) Thus, the Court turns next to the process Plaintiff was due.

Plaintiff fails to make any allegations challenging the sufficiency of the process provided by Woods. Indeed, Plaintiff's allegations are devoid of any mention of whether he received "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; [or] a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna*, 356 F.3d at 487. Plaintiff simply summarizes the testimony offered at the hearing, and claims, in essence, that Woods' decision was contrary to the testimony provided by Plaintiff's witnesses. (Pl.'s Opp'n ¶ 31.) Yet, these allegations go only to the evidence Woods considered at the hearing, not the process due to Plaintiff. *See Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment."). Indeed, even if Plaintiff was challenging the sufficiency of the evidence at the hearing, due process in this context requires only that the hearing officer's decision be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). This standard is extremely tolerant and is satisfied 'if there is *any* evidence in the record that supports' the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Here, Plaintiff alleges that there was testimony in the record from Vigna that *Plaintiff* assaulted the

officers when he "picked up a chair in the crouching position and hit [Vigna] in the knee." (Pl.'s Opp'n ¶ 32.) While Plaintiff claims that this is false, "[u]nder the standard enunciated in *Wolff,* the Court will not independently assess the . . . officer's reliability," *Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 77 (N.D.N.Y. 2001) (internal quotation marks omitted), and such direct testimony from an officer involved in certainly constitutes *some* evidence, *see Hinton v. Prack*, No. 12-CV-1844, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted) (holding that "some evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his first-hand observation and detailed account of the incident); *Homen v. Hasty*, 229 F. Supp. 2d 290, 297 (S.D.N.Y. 2002) (finding the some evidence standard satisfied where the hearing officer reviewed, *inter alia,* "the incident reports [and] the statements of the officers involved"); *Hinebaugh*, 137 F. Supp. 2d at 77 (concluding that the testimony of the corrections officers who witnessed the incident "provided 'some evidence' for the disciplinary body to make their finding regarding [the inmate's] guilt"). Accordingly, in the absence of any allegations regarding what process Plaintiff received at his hearing, and the evidence of Vigna's testimony at Plaintiff's hearing, his due process claim against Woods is dismissed.

As to Vigna, assuming he testified falsely, as the Court must assume at this stage, Plaintiff's allegations are insufficient to state a claim. The Second Circuit has determined that "a prison inmate has no general constitutional right to be free from being falsely accused." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Bey v. Griffin*, No. 16-CV-3807, 2017 WL 5991791, at *7 (S.D.N.Y. Dec. 1, 2017) ("It is well settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." (alteration and internal quotation

marks omitted)). "Rather, the inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." *James*, 2018 WL 2694436, at *14 (internal quotation marks omitted). Plaintiff fails to satisfy this standard as to Vigna because he does not allege that Vigna testified in retaliation for Plaintiff attempting to exercise a constitutional right, nor has he alleged that he was deprived of due process, as discussed above. Plaintiff's allegation against Vigna is simply that Vigna's testimony was false. This cannot support a due process claim against Vigna. Accordingly, Plaintiff's due process claim against Vigna is dismissed as well.

### 2. Hill's Motion To Dismiss

#### a. State Action Requirement

Hill argues that, as a threshold matter, Plaintiff has failed to allege that Hill, a physician working at St. Luke's Hospital, an outside, private health care facility, is a state actor subject to suit for deliberate indifference under § 1983. (Hill Mem. in Supp. of Mot. To Dismiss ("Hill Mem.") 7–10 (Dkt. No. 77)); Hill Reply in Supp. of Mot. To Dismiss ("Hill Reply") 4–6 (Dkt. No. 89).) Under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In regard to private conduct, the Supreme Court has sought to "'preserve[] an area of individual

freedom by limiting the reach of federal law' and avoid[] the imposition of responsibility on a State for conduct it could not control." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937; *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (per curiam) (referring to and applying the "two-prong test" outlined in *Lugar*).

"Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character" that it can be regarded as governmental action. *Evans v. Newton*, 382 U.S. 296, 299 (1966); *see also Hollander*, 624 F.3d at 34 (recognizing "actions of nominally private entities are attributable to the state" under certain circumstances). A private entity, however, does not become a state actor for purposes of § 1983 merely on the basis of "the private entity's creation, funding, licensing, or regulation by the government." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003). "Rather, there must be such a close nexus between the state and the challenged action that the state is *responsible* for the specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and internal quotation marks omitted). Similarly, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). To establish that a private actor's

conduct should be deemed state action, a § 1983 plaintiff must demonstrate that the state was involved in the specific activity giving rise to his or her cause of action; it is not enough to show merely that the state was involved in "some activity" of the private entity "alleged to have inflicted injury upon [the] plaintiff." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (emphasis and internal quotation marks omitted). Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks omitted), three main tests have emerged:

> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state, ("the public function test").

*Sybalski*, 546 F.3d at 257 (alterations and some internal quotation marks omitted); *see also Hollander*, 624 F.3d at 34 (same).

As a general matter, "private hospitals do not act under the color of law for § 1983 purposes." *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 200 (N.D.N.Y. 2006) (internal quotation marks omitted); *see also Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (holding that a private hospital was not a state or municipal facility and thus was not liable pursuant to § 1983, unless it was acting as an instrumentality of the state); *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11–CV–2456, 2014 WL 1271197, at *11 n.14 (E.D.N.Y. Mar. 26, 2014) (finding that, because the defendant was a private hospital and the plaintiff failed to plead any facts suggesting that the hospital acted in concert with state actors, the hospital could not be a state actor under § 1983). However, private medical providers may be held liable as state actors

under certain circumstances; for example, when a private company provides medical care in prisons, it "performs a role traditionally within the exclusive prerogative of the state and therefore . . . is the functional equivalent of the municipality." *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013); *see also West v. Atkins,* 487 U.S. 42, 55–57 (1988) (holding that a private physician providing medical services to state prisoners within the prison and under contract with the state acts under color of law). However, "courts have held that the provision of medical care by a private hospital to an individual in police custody on the same terms as the hospital would provide to the public at large does not satisfy the state action test." *Hollman v. Cty. of Suffolk*, No. 06-CV-3589, 2011 WL 280927, at *5 (E.D.N.Y. Jan. 27, 2011); *see also Sykes,* 412 F. Supp. 2d at 204 (finding a physician to not be a state actor where he "engaged in a single encounter with a prisoner presented for emergency treatment, which he was obligated under law to provide"); *Kavazanjian v. Rice,* No. 03–CV-1923, 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Providing isolated emergency treatment to a prisoner on equal terms with the general public . . . does not constitute state action."); *Morse v. City of N.Y.*, No. 00-CV-2528, 2001 WL 968996, at *8 (S.D.N.Y. Aug. 24, 2001) ("The fact that [the plaintiff] was brought to the hospital from police custody and was released from the hospital into police custody is insufficient to transform this private hospital and its staff into state actors for [§] 1983 purposes.").

As alleged by Plaintiff, he was "rushed to a[n] outside hospital," (Compl. 3), which he later identified as "St. Luke's Hospital," and where he was seen by "Hill, the emergency room physician," (Pl.'s Opp'n ¶ 12). There is simply nothing in Plaintiff's allegations that would convert Hill's one-time treatment of Plaintiff, as a result of Plaintiff's being "rushed" to St. Luke's Hospital, into state action. Plaintiff does not allege the existence of a contract between

St. Luke's Hospital and Fishkill, nor does he allege he was treated by Hill *in* Fishkill or that Hill's treatment was somehow tethered to Plaintiff's status as an inmate; rather, as specifically alleged by Plaintiff, Hill's "obligation to treat Plaintiff did not arise from Plaintiff's status as an [inmate,] but from his status as an incoming patient to the emergency room." *Brown v. Pangia*, No. 11-CV-6048, 2014 WL 2211849, at *3 (S.D.N.Y. May 27, 2014); *see also id.* ("In cases where a private physician was found to have acted under color of state law, the physician either had a contract with the state or otherwise willfully agreed to treat incarcerated patients."); *Vazquez v. Marciano*, 169 F. Supp. 2d 248, 253–54 (S.D.N.Y. 2001) (holding that an emergency room physician was not a state actor based in part on the fact that he was not under contract with the state or performing a function traditionally reserved for the state). Nor has Plaintiff alleged that the state "exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State," *Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)), or that St. Like's Hospital and Hill are "willful participant[s] in joint activity with the state," *Sybalski*, 546 F.3d at 257 (alterations and internal quotation marks omitted). Indeed, he does not allege any state involvement in his treatment beyond his mere transport to St. Luke's Hospital's emergency room from Fishkill. (Compl. 3; Pl.'s Opp'n ¶¶ 12–14.)

Accordingly, Plaintiff has failed to allege that Hill was a state actor, and therefore Plaintiff has failed to state a cause of action against him under § 1983.

### b. Supplemental Jurisdiction

In his Opposition, Plaintiff seeks to bring a medical malpractice claim against Hill. (Pl.'s Opp'n ¶ 51.) As discussed in detail above, this Court has already dismissed all federal causes of action against Hill for lack of any state action. Where a district court dismisses the claims over

which it has original jurisdiction, it "may decline to exercise supplemental jurisdiction" over any remaining claims. 28 U.S.C. § 1367(c)(3); *accord Matican v. City of N.Y.*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [a plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citations and internal quotation marks omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds that nothing distinguishes this Action from "the usual case." For one, Plaintiff's federal claims against Hill have all been dismissed well before trial. *See Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss). Moreover, none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—militates against such dismissal, 484 U.S. at 350 n.7, considering that it is not alleged that Hill had any role in the alleged assault at Fishkill, which is the basis of the surviving § 1983 claims against Booth, Salerno, Garnot, Jordan, and Vigna, *see Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *19 (S.D.N.Y. Mar. 29, 2016) (declining to exercise supplemental jurisdiction

over claims against certain defendants where all federal claims against those defendants had been dismissed and Plaintiff did not allege the defendants "had any role in the particular events that gave rise to the surviving § 1983 claims against [the remaining defendants]"); *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *12 (S.D.N.Y Sept. 30, 2015) (dismissing state law claims against certain defendants against whom no federal claims remain, while maintaining jurisdiction over federal and state claims brought against the remaining defendants); *Germano v. Dzurenda*, No. 09-CV-1316, 2011 WL 1214435 at *20 (D. Conn. Mar. 28, 2011) (dismissing without prejudice state-law claims against 12 defendants once the federal claims against those same 12 defendants were dismissed, even though federal claims remained viable against others in the case); *Lewis v. Sieminski*, No. 08-CV-728, 2010 WL 3827991, at *9 (D. Conn. Sept. 22, 2010) (declining to exercise supplemental jurisdiction over state law claims against certain defendants after dismissing the federal claims against them, even though federal claims against another party continued).

Accordingly, the Court declines to exercise jurisdiction over Plaintiff's state law claim against Hill.

### III.  Conclusion

For the reasons stated above, the Fishkill Defendants' Motion To Dismiss is granted in part and denied in part, and Hill's Motion To Dismiss is granted.  All claims against Woods and Hill are dismissed, while the Eighth Amendment claims asserted against Booth, Salerno, Garnot, Jordan, and Vigna will proceed.

If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion.  Plaintiff should include within the amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.

Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain all of the claims against all Defendants, including those who have not joined in this Motion to Dismiss. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his claims against Woods and Hill may be dismissed with prejudice.

Moreover, Peterson has been served, but has yet to appear in this Action. It appears, based on Plaintiff's Opposition, that Peterson is employed as a nurse at Fishkill as opposed to an outside hospital. (Pl.'s Opp'n ¶¶ 11–12.) Indeed, Peterson was served "through the [Department of Corrections and Community Supervision's] Counsel's Office." (Dkt. No. 55.) Accordingly, the Court orders the Fishkill Defendant's counsel to file a letter with the Court within 14 days of the date of this Opinion regarding Peterson's appearance in this case. If Peterson fails to appear, the Court may enter default judgment against her in favor of Plaintiff.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. No. 73, 75), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED:      September 28, 2018
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE