UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN THOMPSON,

                Plaintiff,

-against-

SGT. TROY BOOTH,

                Defendant.

**ORDER**

16-CV-03477 (PMH)

PHILIP M. HALPERN, United States District Judge:

Kevin Thompson ("Plaintiff") commenced this action on May 9, 2016. (Doc. 2). On June 15, 2020, Defendants Salerno, Garnot, Jordan, and Vigna (the "Appearing Defendants") moved for summary judgment. (Doc. 156).[1] Defendant Sgt. Troy Booth ("Booth") did not move for summary judgment and otherwise failed to participate in this action. At an evidentiary hearing held in connection with the Appearing Defendants' motion for summary judgment on August 4, 2021, the Court found that Plaintiff failed to satisfy his burden of production to establish that the administrative grievance process was unavailable to him, and therefore, the Court found that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. (Doc. 193 at 1). Accordingly, Plaintiff's claims were dismissed with prejudice as to the Appearing Defendants. (*Id.*). In light of Booth's failure to participate in the action, however, the Court granted Plaintiff permission to seek a default judgment on liability against him. (*Id.*).

On October 8, 2021, Plaintiff moved by way of Order to Show Cause for a default judgment on liability with respect to Booth. (Docs. 198-200). On October 12, 2021, the Court issued an Order to Show Cause to Enter Default Judgment against Booth (Doc. 201), which was served on

---

[1] A more complete recitation of the factual and procedural history of this case can be found in the Court's March 10, 2021 Memorandum Opinion and Order. (Doc. 168).

Booth via Federal Express and e-mail on October 18, 2021 (Docs. 202-03). On November 8, 2021, the Court directed Booth to file an opposition to Plaintiff's motion for default judgment by November 22, 2021. (Doc. 207). The Court warned that, should Booth fail to file an opposition by November 22, 2021, the matter would proceed without his participation. (*Id*.). Booth did not file an opposition.

On December 7, 2021, a default judgment was entered against Booth on liability for violating Plaintiff's Eighth Amendment rights. (Doc. 208-09). The Court scheduled an inquest on damages to be held on March 10, 2022 at 11:00 a.m. (Doc. 208 at 1). In advance of the inquest, on February 16, 2021, Plaintiff filed a damages assessment supported by the following documents: (1) the Affidavit of Plaintiff (Doc. 215, "Pl. Aff."); (2) the Declaration of Gary Montgomery (Doc. 215-1); (3) a transcript of Plaintiff's February 5, 2014 disciplinary hearing (Doc. 215-2, "Hearing Tr."); (4) a certified copy of Plaintiff's medical records (Doc. 215-3); (5) a Use of Force Report dated January 13, 2014 (Doc. 215-4, "Force Report"); and (6) a Memorandum of Law in Support of Plaintiff's Damages Assessment against Defendant Sgt. Booth, C.O. (Doc. 215-5, "Pl. Br."). Plaintiff, in his memorandum of law, requested $300,000 to $1,000,000 in compensatory damages and $100,000 to $150,000 in punitive damages.[2] (Pl. Br. at 1, 11). The Court held an inquest on damages on March 10, 2022, during which the Court heard testimony from Plaintiff and oral argument from his counsel. (Mar. 10, 2022 Min. Entry). Booth did not appear at the March 10, 2022 inquest hearing.[3] On March 11, 2022, Plaintiff's counsel filed supplemental authority in support of Plaintiff's damages. (Doc. 216).

---

[2] Plaintiff's *pro bono* counsel, commendably, did not seek an award of attorney's fees or costs. (Pl. Br. at 1 n.1). Nor did Plaintiff seek an award of prejudgment interest. (*Id*.).

[3] The day after the inquest, on March 11, 2022, the Court received a number of e-mails from Booth. As set forth in the Court's Individual Practices, e-mails are not permitted unless a party has received prior authorization; and communications with the Court must be by letter. The Court therefore disregards these

For the reasons set forth on the record and below, the Court grants Plaintiff compensatory damages in the amount of $50,000.

## STANDARD OF REVIEW

Common law tort principles generally determine the appropriate level of damages for a violation of a plaintiff's constitutional rights in a section 1983 action. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1502 (2012) ("Despite the broad terms of § 1983, this Court has long recognized that the statute was not meant to effect a radical departure from ordinary tort law . . . ."); *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999); *Bermudez v. City of N.Y.*, No. 11-CV-00750, 2014 WL 11274759 at *6 (S.D.N.Y. Mar. 25, 2014) ("Section 1983 civil actions rely on the same analysis as state common law tort actions and serve the same primary goal of compensation."). "Under general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015). Compensatory damages may "include damages for pain, suffering, and other emotional harms," *Garland-Sash v. Lewis*, 348 F. App'x 639, 642 (2d Cir. 2009), along with monetary harms such as out-of-pocket losses, *Stachura*, 477 U.S. at 307. Awarding such damages, which are "grounded in determinations of plaintiffs' actual losses," serves section 1983's basic purpose of compensating a plaintiff for his proven injuries. *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'"); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a § 1983 suit absent proof of actual injury").

---

e-mails, as it properly considers only documents filed in accordance with the Court's rules and the procedures for *pro se* filings, available at: https://www.nysd.uscourts.gov/prose.

It follows that a plaintiff subjected to excessive force is not entitled to compensatory damages as a matter of law. *See Kerman v. City of N.Y.*, 374 F.3d 93, 123 (2d Cir. 2004); *Atkins v. N.Y.C.*, 143 F.3d 100, 103 (2d Cir. 1998); *Hyppolite v. Collins*, No. 11-CV-00588, 2015 WL 2179772 at *3 (D. Conn. May 8, 2015); *Dixon v. Ragland*, No. 03-CV-00826, 2008 WL 5251359 at *7 (S.D.N.Y. Dec. 16, 2008). "A jury could reasonably find that only nominal damages are appropriate where, for example, a plaintiff's testimony as to his injuries lacks objective support or credibility, or where both justified force and unjustified force were used, either of which could have caused his injuries, or where some of the plaintiff's injuries could have been caused by a codefendant who was not found to have used excessive force." *Kerman*, 374 F.3d at 123. The plaintiff therefore must "prove that his injuries were proximately caused by the constitutional violation." *Atkins*, 143 F.3d at 103; *see also Anderson Grp., LLC*, 805 F.3d at 52 ("Because compensatory damages are 'intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct,' courts will not permit recovery when the connection between the claimed loss and the tortious act is speculative or uncertain." (citation omitted)). "Once the plaintiff meets this burden, the defendant then bears the risk of uncertainty as to the amount of damages." *Anderson Grp., LLC*, 805 F.3d at 53.

The "competent evidence" required to support a damages award may vary depending on the factual circumstances at issue. *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 55 (2d Cir. 2002). For example, the Second Circuit has established the following guidelines in the context of emotional distress damages:

> A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself. Evidence that a

4

> plaintiff has sought medical treatment for the emotional injury, while helpful, is not required . . . [nor are] physical symptoms of emotional distress.

*Id*. at 55-56 (citations omitted); *see also Norwood v. Salvatore*, No. 12-CV-01025, 2016 WL 1060299 at *14 (N.D.N.Y. Mar. 15, 2016); *Salem v. Maroc*, No. 15-CV-05909, 2016 WL 1717219 at *5 (S.D.N.Y. Apr. 28, 2016). The decision whether to award such damages thus will often involve "not only determinations of fact but also the consideration of subjective and intangible factors properly left to the sound discretion of the factfinder, here the court." *Cowan v. Prudential Ins. Co. of Am.*, 852 F.2d 688, 690 (2d Cir. 1988).

While the calculation of damages is within the province of the fact finder, there exists "an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (quotations omitted). The determination of whether a damages award is excessive "'should not be made in a vacuum,' but should include consideration of the amounts awarded in other, comparable cases." *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997) (citation omitted). A court is not limited to a review of section 1983 cases and should look to similar state law cases as well. *See Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). An appropriate damages award generally should fall "within a reasonable range" of comparable awards. *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003).

With respect to punitive damages, such damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A jury may appropriately award punitive damages where the "character of the tortfeasor's conduct . . . is of the sort that calls for deterrence and punishment over and above that

provided by compensatory awards." *Id*. at 54. A plaintiff must show a "positive element of conscious wrongdoing" by the defendant. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (internal quotation marks omitted); *see also Cameron v. City of N.Y.*, 598 F.3d 50, 69 (2d Cir. 2010).

There is no formula or objective standard that courts use to calculate punitive damages awards, which "are by nature speculative, arbitrary approximations." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). Even so, courts bear a duty to ensure that such awards are fair and reasonable, as punitive damages may result in a windfall to a plaintiff fully compensated for his actual losses. *Id*. at 93-95.

## ANALYSIS

I. <u>Compensatory Damages</u>

It is axiomatic that, when determining compensatory damages, courts should consider other "comparable cases." *Mathie*, 121 F.3d at 813. In support of his request for $300,000 to $1,000,000 in compensatory damages, Plaintiff cites three cases. In the first case, *DiSorbo*, the plaintiff was awarded $250,000 in compensatory damages after sustaining "two large hematomas on her head," as well as bruises throughout her upper body, head, right forehead, mandible, right shoulder, hands, left elbow, spine, and the area behind her left ear. 343 F.3d at 179. In the second case, *Cardoza v. City of N.Y.*, the plaintiff was awarded $400,000 for past pain and suffering and $1,250,000 for future pain and suffering after a police officer pepper sprayed him in the face and repeatedly struck him with a baton, resulting in injuries requiring surgery on the plaintiff's right hand. 29 N.Y.S.3d 330, 343 (App. Div. 2016). In the third case, *Youngblood v. Baldwin*, the plaintiff received $240,000 in a settlement with corrections officers who allegedly used excessive force against him

resulting in a laceration to the plaintiff's head and a broken nose. No. 08-CV-05982 (S.D.N.Y. 2008). These cases, however, are not appropriate comparators to this case.

First, the cases cited by Plaintiff involve individuals, unlike him, who were not found guilty of wrongdoing in connection with the events that gave rise to their respective injuries. (Pl. Br. at 9). Indeed, Plaintiff, at his February 5, 2014 disciplinary proceeding, was found guilty of several disciplinary violations, including violent conduct, creating a disturbance, assault on staff, an unhygienic act, interference with an employee, and refusing a direct order. (Hearing Tr. at 38). Second, unlike in *DiSorbo* and *Cardoza*—cases where it is apparent that the plaintiffs' injuries resulted entirely from the excessive force used against them—it is difficult to discern based on the evidence presented in this case the extent to which Plaintiff's injuries resulted from Booth's conduct, as opposed to the Appearing Defendants' conduct, Plaintiff's own conduct, and Plaintiff's pre-existing medical conditions. Third, *Youngblood* is not an appropriate comparator because that case involved a monetary settlement, as opposed to a damages award from a jury or inquest.

In addition, Plaintiff's counsel cites two cases in their March 11, 2022 letter—*Byrnes v. Angevine*, No. 12-CV-01598, 2015 WL 3795807 (N.D.N.Y. June 17, 2015) and *Hightower v. Nassau Cnty. Sherriff's Dep't*, 325 F. Supp. 2d 199 (E.D.N.Y. 2004)—for the general proposition that, in cases where the plaintiff's injuries "d[o] not necessarily result in permanent life-long injuries," the range of compensatory damages awarded falls within the $10,000 to $100,000 range. (Doc. 216). Plaintiff's counsel concedes, however, that they were unable to "find a case directly on point to Plaintiff's case." (*Id.*). Ultimately, this supplemental authority does not alter the Court's analysis—but rather, supports it.

Of the cases cited by Plaintiff, the most factually similar is *Dixon v. Agbai*, No. 15-CV-00850, 2016 WL 3702749 (S.D.N.Y. July 8, 2016), *adopted by* 2016 WL 5660246 (S.D.N.Y. Sept.

28, 2016). That case, however, is still markedly different from this one. In *Dixon*, the plaintiff was awarded $250,000 in compensatory damages after a corrections officer admitted to kicking and stomping on the plaintiff's head while he was handcuffed on the ground. *Id*. at *1, *7. As a result, an administrative law judge found the officer's actions to be "deliberate, savage, and reprehensible" and recommended his termination. *Id*. Here, however, the corrections officers alleged to have assaulted Plaintiff did not admit to and were not found culpable of wrongdoing. To the contrary, Plaintiff was found guilty of several disciplinary violations, including assaulting an officer, and he—not the corrections officers—was punished for his actions.

The Court has not been provided with any directly on-point case law. Therefore, for purposes of its damages analysis, the Court compares the facts of this case within the context of those cited by Plaintiff, which are generally more egregious in nature. Here, although the Plaintiff allegedly suffered an assault at the hands of multiple corrections officers, only Booth's conduct is at issue. Focusing on Booth, the only direct evidence that his conduct resulted in injuries to Plaintiff derives from the Use of Force Report and Plaintiff's own testimony at the inquest hearing. (Force Report ("I Sergeant Booth . . . grabbed the inmate's left hand and placed it in mechanical restraint . . . ."); *see also* Thompson Aff. ¶ 11 ("Defendant Booth and another correctional officer put handcuffs on me, which were very tight and hurt my hands and wrist.")). Plaintiff also testified that he was slammed onto a gurney once handcuffed, causing injury to his back and neck. From that evidence, the Court concludes that Booth is liable for exacerbating Plaintiff's pre-existing thumb injury, contributing to Plaintiff's need for thumb surgery, and causing some back and neck pain. Plaintiff testified that he has suffered continuous emotional distress, sleeplessness, and depression since this incident. He also testified that he regularly sees a psychologist to help him with these issues. The Court also finds that some portion of Plaintiff's psychological trauma

described at the inquest by Plaintiff is attributable to Booth's conduct. But there is no evidence supporting Plaintiff's contentions that Booth otherwise physically injured him, as Plaintiff admittedly does not recall most of the January 13, 2014 incident.

Upon consideration of the injuries provably caused by Booth within the context of the cases cited by Plaintiff, the Court awards Plaintiff $50,000 in compensatory damages. $40,000 is meant to compensate Plaintiff for his physical injuries; and $10,000 for emotional injuries, pain, and suffering.

## II. Punitive Damages

Plaintiff also seeks $100,000 to $150,000 in punitive damages, despite the fact that he did not include a claim for punitive damages in his original complaint. (Doc. 2). While Plaintiff's original complaint was drafted *pro se*, his failure to seek punitive damages therein requires the Court to deny Plaintiff's present request for punitive damages. *See Lizotte v. Menard*, No. 17-CV-00027, 2019 WL 943539, at *1 (D. Vt. Jan. 25, 2019) (declining to entertain *pro se* plaintiff's claim for punitive damages where such claim was not pled in the complaint), *adopted by* 2019 WL 943507 (D. Vt. Feb. 26, 2019); *Mendoza v. City of Rome, N.Y.*, 872 F. Supp. 1110, 1125 (N.D.N.Y. 1994) ("[I]t is . . . clear that any claim for punitive damages must be raised in the pleadings."). Even if the Court were to consider Plaintiff's punitive damages claim, he has not put forth any evidence for the Court to conclude that Booth acted with "evil motive or intent" in attempting to restrain Plaintiff during the January 13, 2014 incident. *Smith*, 461 U.S. at 56. Indeed, given the detailed disciplinary hearing transcript made a part of this proceeding (Hearing Tr.), the admissions made by Plaintiff at that hearing, and the disciplinary officer's conclusion, Plaintiff could not establish as a matter of fact the requisite recklessness or callous indifference to permit a punitive damages award. Accordingly, the Court declines to award Plaintiff punitive damages.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth on the record during the March 10, 2022 inquest on damages, judgment shall be entered in Plaintiff's favor against Defendant Booth in the amount of $50,000 compensatory damages. Plaintiff shall submit a judgment within five (5) days from the date hereof.

Plaintiff's counsel is directed to serve a copy of this Order on Booth and file proof of service on the docket.

**SO ORDERED:**

Dated: White Plains, New York
       March 14, 2022

_____
Philip M. Halpern
United States District Judge